RICHARD A. HALL (SBN 135483)
Dee L. Paull (SBN 126152)
David A. Pereira[1] (CSA 27093)
**BOTTOMLINE LAWYERS**
P.O. Box 237
Auburn, CA 95604
Telephone: (530) 888-7100
Facsimile: (866) 305-1238

Attorneys for Plaintiffs/Debtors

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

|  |  |
|---|---|
| In re: | Case No:   2011-31221 |
| Anthony Norman Landry and Teresa Marie Landry, | Chapter 13 |
| Debtor. | Adversary No. |
| | **COMPLAINT FOR VIOLATIONS OF CONTRACT WITH DEBTOR; AUTOMATIC STAY, ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT** |
| Anthony Norman Landry and Teresa Marie Landry, | |
| Plaintiffs, | |
| v. | |
| Bank of America, N.A., U.S. Bank, N.A., as Trustee for the Certificateholders of the LXS 2007-16N Trust Fund and DOES 1-10, | |
| Defendants. | |

### Jurisdiction and Venue

1.      This is an adversary proceeding to recover money damages pursuant to Rule

_____

[1] David A. Pereira is a Certified Law Student, California State Bar Certification #27093.

7001 of the Federal Rules of Bankruptcy Procedure.

2.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334, inasmuch as plaintiff's filed their Chapter 13 bankruptcy action in In re Anthony Norman Landry and Teresa Marie Landry, Case No. 2011-31221, United States Bankruptcy Court, Eastern District of California (Sacramento Division).

3.     This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. §157(b)2A.

4.     California State causes of action are directly related to violations of bankruptcy laws.

5.     This district is the proper venue for this proceeding pursuant to 28 U.S.C. §1409.

## PARTIES

6.     Plaintiffs are and at all times mentioned in this complaint were residents of Placer County.

7.     Defendant Bank of America, N.A. (hereafter, "BofA") is a national bank with its principal place of business in Charlotte, North Carolina.

8.     BofA and its successors and/or assignees claim plaintiffs owe them money.

9.     Defendant U.S. Bank, N.A. as Trustee for the Certificateholders of the LXS 2007-16N Trust Fund (hereafter, "US Bank") is a national bank with its principal place of business at 425 Walnut Street, Cincinnati, OH 45202.

10.    U.S. Bank and its successors and/or assignees claim plaintiffs owe them money.

## FACTUAL ALLEGATIONS

11.    Plaintiffs have a loan US Bank (promissory note) serviced by BofA which is secured by a Deed of Trust on their property located at 7330 Meadowlark Lane, Sheridan, CA   95681.

12.    The contract of the debtor required an interest rate change on July 1, 2012 which

would impact the payment due on August 1, 2012 by Plaintiff.

13.     The new interest rate effective July 1, 2012 is based on one year average LIBOR index in effect 45 days before the scheduled rate change.

14.     To arrive at the new rate, the contract calls for taking the LIBOR index above and adding 2.5% to it.

15.     Plaintiff contends the LIBOR index in effect 45 days before July 1, 2012 is 1.0679%.

16.     Plaintiff contends that adding 2.5% to the LIBOR index of 1.0679% equals 3.3179%.   The contract requires the rate to be rounded to the nearest .125%.   This rounds the interest rate up to 3.375%.

17.     Plaintiff contends, the contract requires, when the interest rate changes, the payment is recalculated using the current balance re-amortized over the remaining term of the loan.

18.     Plaintiff contends that based on the loan balance currently due of $477,988.70 provided by Bank of America/U.S. Bank the calculated payment over the remaining term of 300 months is $1,344.34, principal and interest.

19.     Plaintiff contends that the correct principal and interest payment due under the contract due effective August 1, 2012 is $1,344.34.

20.     On July 10, 2012, Bank of America/U.S. Bank demanded from the trustee the payment is a principal and interest payment of $2,987.44 plus impounds of $411.79 for a total payment of $3,399.22.   They demanded that this payment amount is effective August 1, 2012.

21.     This amount completely breaches the contract.

22.     The payment shock of this payment which is more than due by $1,643.10, more than double the contract payment that substantially harms the debtor and renders the current plan of reorganization in jeopardy.

23.     Plaintiff had their counsel's office contact the person who filed the notice of payment change to seek a resolution at BofA, Ms. Marita Graulich, Assistant Vice President of Bank of America and pointed out the obvious error.

24.     Resolution was unsuccessful.

25.     The conduct of BofA in servicing this loan on behalf of US Bank is a material breach of their contract with the Plaintiff and shows a total contempt towards solving this issue with debtor's counsel and a lack of competence in addressing these issues.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against All Defendants)**

26.     Plaintiffs incorporate as though fully set forth herein all the preceding paragraphs of this complaint.

27.     Plaintiff is informed and believes and thereon alleges that at all relevant times each of the defendants was acting within the scope and course of his or her agency and employment.

28.     The contract provides for an award of reasonable attorneys' fees to the prevailing party in any dispute arising out of the contract.

29.     On or about October 25, 2005, plaintiff and defendants and each of them, entered into an written agreement whereby plaintiff agreed to make payments according to the terms stated therein.   See attached Exhibit A.

30.     Plaintiff contends that Defendants have demanded and have been paid an amount substantially greater than amount called for in the contract.   See attached Exhibit B.

31.      Defendants, and each of them, breached their contract with plaintiff by demanding more than amount contractually required for the plaintiff to pay.

32.     As a result of the breach of the defendants, and each of them, in the obligations

pursuant to the contract, the Defendants have received approximately $1,700.00 per month more than the contract requires.

33.     Demand has been made on defendants, and each of them, for repayment but defendants and each of them have failed and refused and continue to fail and refuse, to repay the sum improperly paid by plaintiff.

34.     Further, the demand of ~$1,700.00 per month has placed their Chapter 13 plan in substantial jeopardy and if the debtor should fail in their plan, it will have been directly caused by Defendants.

35.     Therefore, Plaintiffs demand the return of all excess payments on their loan demanded and paid by Defendants.

36.     Plaintiffs further demand that Defendants pay the reasonable attorney's fees as allowed for in the contract.

**37.**     Plaintiffs also demand all damages proximately caused by the Defendants breach of contract to be proven at trial which includes any harm caused by the Plaintiffs inability to perform under their Chapter 13 plan.

**SECOND CAUSE OF ACTION**
**FOR MONEY HAD AND RECEIVED**
**(Against All Defendants)**

38.     Plaintiffs incorporate as though fully set forth herein all the preceding paragraphs of this complaint.

39.     Plaintiff is informed and believes and thereon alleges that at all relevant times each of the defendants was acting within the scope and course of his or her agency and employment.

40.     Plaintiff contends that Defendants have demanded and have been paid ~$1,700.00 per month since August 1, 2012 more than they were legally entitled to.

41.     Demand has been made on defendants, and each of them, for repayment but defendants and each of them have failed and refused and continue to fail and refuse, to

repay the sum improperly demanded by Defendants.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE AUTOMATIC STAY**
**(Further Incorporating Abuse of Process)**
**(Against All Defendants)**

42.     Plaintiffs incorporate as though fully set forth herein all the preceding paragraphs of this complaint.

43.     The automatic stay of 11 U.S.C. section 362(a) operates as a stay of the following:

" ...

"(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...

" ...

"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

44.     Title 11 of the United States Code, section 541(a)(1) defines property of the estate as follows: "all legal or equitable interests of the debtor in property as of the commencement of the case."

45.     At present, the bankruptcy case is not closed and the stay is in effect for the estate.

46.     Defendants violated the automatic stay, on or about July 10, 2012 by demanding that the Plaintiff pay more than the amount due under the contract.

47.     This act constituted an act to assess or recover a claim against the debtor that arose before the commencement of the case under Title 11 of the United States Code, section 362(a).

48.     All of the actions by defendants constituted acts to attempt to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, under Title 11 of the United States Code, section 362(a), and were in direct

violation of the automatic.

49.     The actions by defendants were knowing and willful as contact was made directly with BofA as stated above and two Motions regarding to the issue have been filed and served on agents of the Defendants which did not result in any changes to the improperly demanded payment.

50.     Section 362(k)(1) of the Bankruptcy Code provides for the imposition of sanctions where a stay violation is willful: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k)(1).

51.     A "willful violation" of the automatic stay occurs when the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay."

52.     Sanctions are appropriate pursuant to a court's inherent powers where the stay violator acted in bad faith. Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1576 (11th Cir. 1995).

53.     The mere violation of the automatic stay constitutes an injury to plaintiffs, inasmuch as the violations by BofA and US Bank restricted plaintiffs' breathing spell and subjected them to continued efforts by defendants to acquire possession or otherwise control plaintiffs' property, including causing plaintiff's embarrassment, harassment and intimidation and more important place their Chapter 13 plan in jeopardy of total failure all caused by the improper demands of the Defendants.

54.     The actions of defendants rise to the level of willful violations because defendants knew the automatic stay was in place and have filed proofs of claims and payment change notices.

55.     Plaintiffs are not required to prove the actual damages suffered as a result of defendants' violations of the automatic stay.

56.     Defendants, with knowledge of the stay, <u>have an affirmative duty to act terminate ongoing violations of the automatic stay</u>, (<u>In re Eskanos</u> , 309 F .3d 1210 (9th Cir. 2002) since knowing retention of property of the estate violates the stay. <u>In re Del Mission Limited: SBOE v. Taxel</u>, 98 F.3d 1147, 1151 (9th Cir. 1996).

57.     There can be no doubt that BofA and US Bank had knowledge of the commencement of the case. The court gave such notice; the debtor and debtor's counsel, repeatedly, gave such notice and counsel for the debtor specifically emailed and received emails from BofA related to the excess payment demand yet have done nothing to rectify it.

58.     Plaintiffs request their out-of-pocket expenses resulting from violations of the stay.

59.     Plaintiffs are entitled to an actual award representing the emotional turmoil they have undergone as a result of defendants' stay violations.

60.     They have suffered emotional distress, aggravation, and inconvenience as a result of the stay violations, as well as humiliation, embarrassment and harassment.

61.     The circumstances surrounding the stay violations make it obvious a reasonable person would suffer emotional harm.

62.     In addition to the damages caused emotionally to plaintiffs, attorneys' fees have also been incurred.

63.     These attorneys' fees were as a direct result of the violations, and plaintiffs ask for an award that will compensate them for the cost of addressing the harm caused by defendants' actions.

64.     Federal Bankruptcy Code 362(h) allows imposition of punitive damages when a creditor willfully violates the bankruptcy automatic stay. Plaintiff contends that the acts are willful.

65.     The purpose underlying the existence of punitive damages in general is to deter

similar conduct in the future.

66.     A strong showing that the defendants acted in bad faith or otherwise undertook their actions in reckless disregard of the law is evident here.

67.     Plaintiff contends that Defendant is engaged in an "Abuse of Process."   "Abuse of process occurs when legal process is used for an improper purpose, to accomplish an end not lawfully obtainable, or to compel someone to do some collateral thing he could not legally be compelled to do." In addition, "the elements of this tort are generally articulated as an illegal or improper use of the process for an ulterior or improper purpose with resulting damage to the plaintiff." See Houghton v. Foremost Fin. Servs. Corp., 724 F.2d 112, 116 (10th Cir. 1983).

68.     As articulated above, Plaintiff believes that BofA and US Bank are attempting to abuse the process by collecting and demanding a payment amount of ~$1,700.00 more than the actual contract amount.

**FOURTH CAUSE OF ACTION**
**FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS**
**(Violations of Rosenthal Fair Debt Collection Practices Act**
**California Civil Code §§ 1788-1788.32)**
**(As to All Defendants)**

69.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

70.     Plaintiff contends that there is a causal connection to violation of the Rosenthal Fair Debt Collection Practices Act and would not be a violation of said act but for its connection to violation of the bankruptcy laws.

71.     Rosenthal Fair Debt Collection Practices Act (RFDCPA), California Civil Code §§ 1788 -1788.32 extends debt collector activity to creditors and also more broadly against persons or entities who are collecting debts of another.

72.     Plaintiff contends that Defendant is a debt collector under the RFDCPA as they are the current owner of the obligation and/or the debt collector for the owner.

73.     The Rosenthal Fair Debt Collection Practices Act in § 1788.17 requires that all debt collectors, as defined under § 1788.2(c), which includes a creditor or anyone else collecting a debt on behalf of themselves or others, must comply with the provisions of 15 U.S.C. §1692b -§1692j and subject to the remedies of 15 U.S.C. § 1692k.

74.     Plaintiff contends that DEFENDANTs, by and through its agent or on behalf of itself, is collecting a debt under the RFDCPA pursuant to 1788.2(d)   as the subject loan transaction meets the definition of a "debt" as contained in said statute as is it a loan of money:

**(d) The term "debt" means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person.**

75.     Plaintiff contends that DEFENDANTs, by and through its agent or on behalf of itself, is collecting a consumer credit transaction under the RFDCPA pursuant to 1788.2(e) as the subject loan transaction meet the definition as contained in said statutes in that the loan was used for personal, family or household purposes:

**(e) The term "consumer credit transaction" means a transaction between a natural person and another person in which property; services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes.**

76.     Plaintiff contends that DEFENDANTs, by and through its agent or on behalf of itself, is collecting a consumer debt and or consumer credit under the RFDCPA pursuant to 1788.2(f) as the subject loan transaction meets the definition as contained in said statutes in that the loan was a consumer credit transaction:

**(f) The terms "consumer debt" and "consumer credit" mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.**

77.     Plaintiff contends that DEFENDANTs, by and through its agent or on behalf of

itself, is a person under the RFDCPA pursuant to 1788.2(g) in the debt attempting to collect as they meet the definition as contained in said statutes:

**(g) The term "person" means a natural person, partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity.**

78.     The debt attempting to be collected by BofA and US Bank actually has a lower contract payament amount then they have demand the trustee collect from the debtor and currently subject to 11 U.S.C. §362 and 11 U.S.C. §524 which thereby also invokes Rosenthal FDCPA as they are attempting to collect a debt which they are not legally entitled to collect.   See 15 USC 1692e (misrepresenting the debt).

79.     Further, such violation is a willful disregard for the rights of the Plaintiff and pursuant to California Civil Code § 1788.30 Plaintiff is entitled to actual damages, a statutory penalty of no less than $100.00 and no more than $1,000.00 and actual attorney fees.

80.     Plaintiff contends that DEFENDANTS do not have in place reasonable procedures necessary to avoid such a violation and their acts were therefore willful and they should not be allowed to avoid said damages and awards by claiming their acts were merely a bona fide error.

**FIFTH CAUSE OF ACTION FOR
DECLARATORY RELIEF**

81.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

82.     Plaintiffs contend that the principal and interest payment of $2,987.44 is incorrect and the correct principal and interest payment due under the contract due effective August 1, 2012 is $1,344.34.

83.     Plaintiff requests that this Court declare the contract payment of BofA and US Bank is not $2,987.44.

84.     Plaintiff requests that this Court declare the contract payment of BofA and US

Bank is $1,344.34 or whatever correct payment Court determines.

## SIXTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
(Against All Defendants and DOES 1-10,000)

85.        Plaintiffs reaffirm and reallege all paragraphs hereinabove as if set forth more fully herein below.

86.        This is an action, in part, for emergency temporary and permanent injunctive and other relief which is brought pursuant to applicable law.

87.        Plaintiffs have a clear legal right to seek temporary and permanent injunctive and other relief as Defendants are demanding and receiving a payment under their contract with the Plaintiff which violates the terms of the contractual agreement of the parties as stated above.

88.        Plaintiffs have no adequate remedy at law to redress the harm complained of as the continued collection of a payment in excess of the contract places the Plaintiff in substantial harm of failing their Chapter 13 plan unjustifiably.

89.        The specific facts set forth in this Adversary Complaint demonstrate that unless an injunction preventing the Defendants from collecting a payment in excess of the contract amount is not granted that Plaintiffs will suffer the irreparable injury, loss, and damage of not completing a successful plan of reorganization and possibly the loss of their home and eviction therefrom.

90.        WHEREFORE, Plaintiffs respectfully request that this Court immediately take jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief expressly precluding and cancelling the Defendants from collecting a payment from debtor inconsistent with the contract of the parties and for any other and further relief which is just and proper.

## <u>PRAYER</u>

WHEREFORE, Plaintiffs request:

(1)    general damages in an amount to be proven at trial.

(2)    punitive damages in an amount to be proven at trial;

(3)    damages for emotional distress in an amount to be proven at trial;

(4)    damages as provided by statute;

(5)    attorneys' fees in an amount to be proven at trial;

(6)    injunctive relief;

(7)    costs of suit; and

(8)    any other and further relief that the Court considers proper.


Dated: November 23, 2012.      **BOTTOMLINE LAWYERS**


By:    /s/ Richard A. Hall
Attorneys for Plaintiffs Anthony Norman Landry
and Teresa Marie Landry

**Exhibit A**

MIN: 100485400000009228

### PAYMENT ADVANTAGE
### FIXED/ ADJUSTABLE RATE NOTE
(LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**

JUNE 19, 2007                    SAN FRANCISCO                    CALIFORNIA
    [Date]                            [City]                          [State]

7330 MEADOWLARK LANE, SHERIDAN, CALIFORNIA 95681
                        [Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 416,000.00 ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will not exceed ONE HUNDRED FIFTEEN AND 000/1000     percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument these default charges may cause the Maximum Negative Amortization Cap to be exceeded. Lender is TWIN CAPITAL MORTGAGE, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

**(A)  Fixed Interest Rate**

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of    7.500 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

**(B)  Adjustable Interest Rate**

The initial fixed interest rate I owe will change to an adjustable interest rate on the        1 st day of   JULY,   2012      and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Adjustable Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding TWO AND 350/1000   percentage point(s)   2.350 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than    12.500 % or lower than the Margin.

**(E)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than    12.500 % or less than    2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months. My interest rate will never be less than    2.500 %.

**3.   PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the           1 st           day of each month beginning on AUGUST 1, 2007. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be

MultiState Payment Advantage Fixed/Adjustable Rate Note - One-Year LIBOR

applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 650 TOWNSEND STREET, SUITE 225, SAN FRANCISCO, CALIFORNIA 94103 or at a different place if required by the Note Holder.

### (B) Minimum Payment

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term.

(i) My Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus FIVE percentage points ( 5.000 )%. The result of this calculation is called the "Minimum Payment Rate." My initial Minimum Payment Rate during the fixed interest rate period is 2.500 %. The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, my Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

(ii) If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to 07/01/2017 ("Recast Date"), my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2, the unpaid Principal balance and the remaining term. This is the Minimum Payment in effect until the Recast Date.

(iii) At the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2, and the unpaid Principal balance.

### (C) Initial Monthly Minimum Payment

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $ 1,543.70

### (D) Monthly Payment Changes

Changes in my monthly payment will be the result of changes in the unpaid principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

### (E) Additions to My Unpaid Principal

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

### (F) Payment Options

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are greater than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i) Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. If the Maximum Negative Amortization Cap is reached then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

### NOTICE OF CHANGES

4. The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**    ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 . 000  % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**12. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ _____ Borrower
ANTHONY LANDE

_____ _____ Borrower

_____ _____ Borrower

_____ _____ Borrower

Multistate Payment Advantage Fixed/Adjustable Rate Note - One-Year LIBOR
Page 5 of 5

**Exhibit B**

FILED
July 10, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004331926

# UNITED STATES BANKRUPTCY COURT

## Eastern District of California (Sacramento)

In re <u>Anthony Norman Landry and Teresa Marie Landry</u>

Debtor

Case No. <u>11-31221</u>

Chapter 13

## Notice of Mortgage Payment Change

If you file a claim secured by a security interest in the debtor's principal residence provided for under the debtor's plan pursuant to § 1322(b)(5), you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank, National Association

**Court claim no.** (if known): 1

**Last four digits** of any number you use to identify the debtor's account: 3218

**Date of payment change:**
Must be at least 21 days after date of this notice          08/01/2012

**New total payment:**
Principal, Interest, and escrow, if any          $3,399.22

### Part 1: Escrow Account Payment Adjustment

Will there be a change in the debtor's escrow account payment?

☐ No

☑ Yes. Attach a copy of the escrow account statement prepared  in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

Current escrow payment: $0.01          New escrow payment: $411.79

### Part 2: Mortgage Payment Adjustment

Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?

☑ No

☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

Current interest rate: _____          New interest rate: _____

Current principal and interest payment: _____          New principal and interest payment: _____

### Part 3: Other Payment Change

Will there be a change in the debtor's mortgage payment for a reason not listed above?

☑ No

☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (Court approval may be required before the payment change can take effect.)

Reason for change: _____

Current mortgage payment: _____          New mortgage payment: _____

**Part 4: Sign Here**

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this Supplement applies.

Check the appropriate box:

☐ I am the creditor.    ☑ I am the creditor's authorized agent.
                                    (Attach a copy of power of attorney, if any.)

I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.

✘ /s/ Marita Graulich _____    Date  07/10/2012 _____
     Assistant Vice President (Approved by: Danette Murrell)

Print:     Marita Graulich _____    Title   Assistant Vice President (Approved by: Danette Mu

Company   Bank of America, N.A. _____    Specific Contact Information:
Address   2380 Performance Dr.                                Phone: 214-209-8480
              Richardson, TX 75082                                Email: marita.graulich@bankofamerica.com

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2012, I have served a copy of this Notice and all attachments to the following by U.S. Mail, postage pre paid and via filing with the US Bankruptcy Court's CM ECF system.

Debtor:

Anthony Norman Landry
7330 Meadow Lark Lane
Sheridan, CA 95681

Teresa Marie Landry
7330 Meadow Lark Lane
Sheridan, CA 95681

Debtor's Attorney:

Richard A. Hall
PO Box 237
Auburn, CA 95604

Richard A. Hall
PO Box 237
Auburn, CA 95604

Trustee:

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

/s/ Bill Taylor
_____

Authorized Agent

0-70f29673-3f8e-4318-90fd-183f13576f16

Page 49